IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLASAR McCLENTON,

       Plaintiff,                          No. CIV S-05-1704 PAN (JFM)

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.               <u>ORDER</u>
_____/

        This case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge). Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny Plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter for further proceedings consistent with this order.

/////

/////

/////

I. Factual and Procedural Background

In a decision dated May 19, 2003, the Administrative Law Judge (ALJ) determined Plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. The ALJ found Plaintiff has severe impairments of left hand pain, status post right wrist surgery for median nerve graft and tendon repair, and dominant right hand pain due to osteoarthritis of the first and second metacarpocarpal joint and the scaphotrapezium joint, but that these impairments do not meet or medically equal a listed impairment; Plaintiff's subjective complaints are not totally credible; Plaintiff has the residual functional capacity to perform on a sustained basis light work

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

which does not involve repetitive or forceful gripping, grasping, and twisting of the wrists and more than occasional fingering on the left hand; Plaintiff's past relevant work as a lumber yard foreman and driver did not require the performance of work-related activities precluded by his residual functional capacity; Plaintiff's medically determinable impairments do not prevent Plaintiff from performing his past relevant work; a significant number of jobs exists in the national economy that Plaintiff can perform; and Plaintiff is not disabled. Administrative Transcript ("AT") 18.

Plaintiff contends that the ALJ committed numerous errors. First, Plaintiff argues that the ALJ erred at the administrative hearing by failing to provide meaningful notice to Plaintiff about his right to representation and by failing to fully develop the record. Second, Plaintiff states that the ALJ failed to consider all of Plaintiff's impairments at step two of the sequential evaluation. Third, Plaintiff believes that the ALJ failed to properly credit Plaintiff's testimony regarding the nature and extent of his functional limitations. Finally, Plaintiff argues that the ALJ's determination that Plaintiff was capable of his past relevant work as well as other work that exists in significant numbers in the national economy ignored significant nonexertional impairments and required the testimony of a vocational expert.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

1  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,
2  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that
3  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.
4  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of
5  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If
6  substantial evidence supports the administrative findings, or if there is conflicting evidence
7  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see
8  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an
9  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d
10  1335, 1338 (9th Cir. 1988).

III.  Analysis

   a.  The ALJ's Development of the Record Was in Error Given Plaintiff's Waiver of His Right to Representation at the Administrative Hearing.

        Plaintiff was unrepresented at the administrative hearing.  AT 11.  Prior to commencing with the administrative hearing on December 6, 2002, the ALJ asked a series of questions to determine if Plaintiff wished to proceed with the hearing without representation.  AT 226-228.  Plaintiff replied that he did wish to continue.  AT 227-228.  The ALJ's decision to continue the hearing in light of this express waiver to the right of representation by Plaintiff was not in error.

        Plaintiff has a statutory right to counsel at the administrative hearing which may be knowingly and intelligently waived.  Duns v. Heckler, 586 F. Supp. 359, 364 (N.D. Cal. 1984), citing Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1982), Floyd v. Schweiker, 550 F. Supp. 863 (N.D. Ill. 1982).  Even if the waiver is deficient, Plaintiff must demonstrate prejudice or unfairness in the proceedings in order to obtain a remand.  Hall v. Secretary of Health, Educ. & Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979).  The ALJ's decision to proceed without representation present was proper.

1    Plaintiff was initially told of his right to representation on August 12, 2001,
2 following the denial of his request for reconsideration. AT 33-36. In the denial letter, Plaintiff
3 was expressly notified that legal help was available to assist his claim and that those services
4 might be free if he qualified. AT 36. The substance of this advice was repeated to Plaintiff by
5 the ALJ at the hearing prior to his waiver. AT 227.
6    At the administrative hearing, the ALJ provided Plaintiff with multiple
7 opportunities to request representation, ask questions about the need for assistance, or continue
8 the proceeding until representation could be found or Plaintiff was comfortable proceeding on his
9 own. In response, Plaintiff affirmed that he wished to proceed with the hearing. AT 227. The
10 ALJ's acceptance of this waiver was proper.
11    The real issue, however, is not whether the waiver was knowing or intelligent, but
12 whether, without the representation, the ALJ met his burden "to conscientiously and scrupulously
13 probe into, inquire of, and explore for all the relevant facts" in order to protect Plaintiff's interest.
14 Hall, 602 F.2d at 1378 (quoting Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981)); Cox v.
15 Califano, 587 F.2d 988 (9th Cir. 1978). This duty includes diligently ensuring that both
16 favorable and unfavorable facts and circumstances are elicited at the hearing. Key v. Heckler,
17 754 F.2d 1545, 1551 (9th Cir. 1985). The ALJ must fully and fairly develop the record, and
18 when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring
19 for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001). Only if the plaintiff
20 can show prejudice or unfairness in the administrative proceeding as a result of not having
21 counsel is remand warranted. Vidal, 637 F.2d at 713.
22    Disability hearings are not adversarial. See DeLorme v. Sullivan, 924 F.2d 841,
23 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996)(holding that the
24 ALJ has duty to develop the record even when claimant is represented). Evidence raising an
25 issue requiring the ALJ to investigate further depends on the case. Generally, there must be some
26 objective evidence suggesting a condition which could have a material impact on the disability

decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.)

The ALJ erred in his obligation to ensure a complete medical record upon which to base his decision.  The ALJ requested and received additional medical records from the physician who treated Plaintiff's hand injuries as well as the treating physicians at Primary Care who diagnosed, among other impairments, Plaintiff's diabetes.  AT 13, 14, 249.  Furthermore, at the hearing, the ALJ inquired into the existence of any impairment that might impact Plaintiff's ability to work.  AT 248.  When given this open-ended opportunity to relate to the ALJ the sources of his disability, Plaintiff described only his hand injuries.  AT 246-248.

However, there is no indication that a consultative examination was requested by the ALJ.  Such an examination is required given the fact that Plaintiff's records contain little consistent evidence of any medical opinions about Plaintiff's prognosis.  20 C.F.R. § 416.919a(a)(2).  The sole medical opinions in the record waver between the nondescript findings of Plaintiff's treating physician who states simply that Plaintiff's hand will never be "normal," AT 173, and the nonexamining State Agency doctor's conclusion that Plaintiff is capable of light work.  AT 163-66.  Furthermore, as explained in detail below, neither of these opinions address the additional medical findings that Plaintiff suffers from the severe impairment of diabetes.  20 C.F.R. § 416.919a(b)(5)(requiring a consultative examination paid for at agency expense whenever there is "an indication of a change in [a claimant's] condition that is likely to affect [their] ability to work").  Given the requirement of the regulation, and the absence of any comprehensive opinions in the record about Plaintiff's functional limitations by those with the opportunity to examine Plaintiff, the ALJ's failure to request testimony from a consultative physician was prejudicial to this unrepresented Plaintiff.

/////

1   The ALJ erred in this case. Plaintiff's waiver of his right to representation was knowing and intelligent. However, in light of Plaintiff's pro se status at the administrative hearing, the ALJ erred in his duty to inquire into all relevant aspects of Plaintiff's impairment. Remand is required in order to permit the ALJ to receive a consultative examination as required by 20 C.F.R. § 416.919a.

      b. <u>The ALJ Erred at Step Two of the Sequential Analysis.</u>

The ALJ found Plaintiff to suffer from the severe impairments of left hand pain, status post right wrist surgery for median nerve graft and tendon repair, and dominant right hand pain due to osteoarthritis of the first and second metacarpocarpal joint and the scaphotrapezium joint. AT 18. This finding was in error. There is substantial evidence in the record that Plaintiff suffered from the additional severe impairment of diabetes.

Substantial evidence supports the ALJ's determination that Plaintiff suffers from severe injuries to both his left and right hands.[2] Plaintiff's medical history documents objective evidence of injury to both his left and right hands. There is little doubt that Plaintiff's traumatic injury to his left wrist and degenerative injury to his right have affected his ability to work.

Plaintiff contends the ALJ improperly assessed the severity of her impairments and failed to consider all of them in combination. An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.

---

[2] The ALJ mistakenly, and repeatedly, found that Plaintiff suffered from injuries to his *left* hand as a result of surgery to his *right* wrist. AT 12, 14, 18. This conclusion is logically inconsistent and a careless evaluation of the evidence in the record. The medical record is clear that Plaintiff suffered nerve and tendon injuries requiring surgery to his left wrist. AT 116-118, 233. Plaintiff makes no claim that the ALJ's finding as it concerns the injury to Plaintiff's left wrist was improper. The court recognizes the ALJ's careless error and has interpreted the ALJ's findings to be severe left hand pain, status post *left* wrist surgery for median nerve graft and tendon repair. The severe impairment to Plaintiff's right hand is the result of osteoarthritis.

1  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis
2  screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290; see also Edlund v.
3  Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).  Impairments must be considered in
4  combination in assessing severity.  20 C.F.R. § 416.923.

5        Plaintiff argues that the ALJ failed to recognize as severe a number of alleged
6  impairments and that the ALJ failed to consider the combination of Plaintiff's physical and
7  mental conditions, including anemia, diabetes, and depression.  (Pl.'s Mot. Summ. J. 13:9.)
8  Plaintiff bears the burden at step two of the sequential evaluation.  See Tidwell v. Apfel, 161
9  F.3d 599, 601 (9th Cir. 1998).  As it concerns his diabetes, Plaintiff has met his burden in this
10 case.  Remand is required in order to permit the ALJ to properly evaluate Plaintiff's claim in
11 light of the substantial evidence that Plaintiff suffers from the severe impairment of diabetes.

12       In evaluating Plaintiff's claim, the ALJ found that Plaintiff did not suffer from the
13 severe impairment of diabetes.  AT 15.  The ALJ determined that Plaintiff's diabetes was not
14 severe as there was no indication that Plaintiff had met the 12 month durational requirement for
15 disability.  Id.  This finding was in error.

16       Generally, an impairment must have lasted or be expected to last for a continuous
17 period of 12 months.  20 C.F.R. § 416.909.  In addition to anemia and renal failure, Plaintiff was
18 diagnosed and treated for his diabetes starting on January 4, 2003, AT 180, approximately one
19 month after the administrative hearing in this case and five months prior to the ALJ's decision.
20 While the ALJ correctly noted that Plaintiff's anemia and renal failure resolved upon treatment
21 and did not meet the durational requirement, the ALJ's finding as it concerned Plaintiff's
22 diabetes was in error.

23       The ALJ noted that Plaintiff received diabetic teaching and nutrition counseling
24 prior to his discharge from the hospital on January 7, 2003.  AT 15.  Included in this teaching
25 was the proper self-administration of insulin injection, which Plaintiff was required to give
26 himself as a result of his diagnosis.  AT 183, 199.  As diabetes is a chronic condition, it can be

8

expected to last longer than 12 months.  See http://www.medicinenet.com/diabetes_mellitus/article.htm. While the ALJ properly noted that diabetic symptoms can be affected by diet and exercise, he erred in his finding that it had no more than a minimal impact on Plaintiff's ability to work.  As stated by Plaintiff's doctors in their discharge notes, Plaintiff is required to inject himself three times daily with insulin.  AT 183.  Furthermore, Plaintiff is required to monitor his blood sugar and react to the conditions caused by varying levels.  AT 199.  Absent some medical breakthrough, these requirements are likely to remain with Plaintiff for the remainder of his life. The ALJ's finding that Plaintiff's diabetes did not meet the durational requirement was in error.

In contrast, the ALJ properly evaluated Plaintiff's anemia and depression.  There is no indication from the medical record that Plaintiff's anemia was likely to meet the durational requirement.  None of the notes from Plaintiff's treating physician describe any complications from Plaintiff's anemia, nor do they prescribe any long term treatment.  Upon stabilization of Plaintiff's anemia and renal problems, the sole focus of Plaintiff's care following his admission to the hospital on January 4, 2003, was his diabetes and the long-term treatment that that condition would require.

Furthermore, while Plaintiff does have a prescription for Zoloft, an anti-depressant, the ALJ properly noted that there is little additional evidence in the record to support any conclusion that Plaintiff's depression met the de minimis standard of step two.  Treatment for depression appears once in the medical record.  AT 175.  As stated by the ALJ, Plaintiff's doctor felt no need to refer him for specialized mental health treatment.  AT 15.  There are no reports from third-party witnesses of mental health issues.  AT 56.  There have been no admissions for medical care based upon Plaintiff's depression.  Indeed, upon his admission for treatment of diabetes, Plaintiff was described as alert and oriented, AT 188, and a "pleasant gentleman," AT 186.  At no time during his stay in the emergency room is any diagnosis of depression made.  AT 180-212.  Finally, at the administrative hearing Plaintiff reported no

1    problems with his mental health that precluded him from working.  AT 248.[3]  As with his
2    anemia, the ALJ properly found that there is no evidence that Plaintiff's depression had a serious
3    impact on Plaintiff's ability to perform basic work activities.
4         Remand is necessary in order to permit the ALJ to reevaluate Plaintiff's claim.
5    The sequential analysis must continue from step two.  Upon remand, the ALJ should consider the
6    full range of Plaintiff's impairments individually and in combination, including his hand injuries
7    as well as his diabetes prior to reaching any determination about Plaintiff's residual functional
8    capacity and disability.
9         c.  The ALJ Erred in His Evaluation of Plaintiff's Subjective Complaints.
10        The ALJ found Plaintiff to be "for the most part credible."  AT 14.  However, the
11   ALJ discounted Plaintiff's testimony that his hand injury precluded him from all work activity.
12   In making this finding, the ALJ noted that Plaintiff's complaints were not supported by the
13   medical evidence in the record.  This finding was in error.  However, given the nature of the
14   ALJ's findings in this case, and the very narrow limits within which the credibility determination
15   was made, any error was harmless and remand on this basis is not required.
16        The ALJ determines whether a disability applicant is credible, and the court defers
17   to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,
18   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make
19   an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad
20   v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be
21   supported by "a specific, cogent reason for the disbelief").
22        In evaluating whether subjective complaints are credible, the ALJ should first
23   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

---

[3] Plaintiff also failed to report any problems with his diabetes at the hearing.  However, this is not evidence that Plaintiff's diabetes was not severe.  Plaintiff had no way of knowing that he was diabetic as he was not diagnosed until one month after the hearing.

F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

   Plaintiff argued that he was precluded from all work.  The ALJ disagreed with this opinion, stating instead that Plaintiff was capable of light work.  The ALJ found support for this opinion in the objective medical evidence in the record as well as Plaintiff's daily activities.  The grounds upon which the ALJ relied to reach his findings were improper.

   The ALJ properly noted that no doctor found Plaintiff unable to perform light exertion.  AT 15.  This statement is both true and misleading.  It is true that the State Agency concluded that Plaintiff was able to perform light exertion with a total preclusion from climbing ropes and scaffolds, and a limitation to occasional crawling.  AT 163-64.  The State Agency also

1  found Plaintiff capable of only limited handling in his right hand, and fingering and feeling in his
2  left hand.  AT 165.  The State Agency also found that Plaintiff was to avoid concentrated
3  exposure to extreme cold and hazards.  AT 166.
4  　　　　However, it is more accurate to note that none of Plaintiff's other physicians
5  offered any specific opinions about Plaintiff's functional capacity.  Dr. Agee treated Plaintiff for
6  his hand injuries, operating on him to repair damage caused to his left wrist nerves and tendons.
7  On July 23, 2002, Dr. Agee gave his most detailed statement on the issue, noting that Plaintiff's
8  left hand would never be normal.  AT 172.  Dr. Nelson was similarly vague, treating only
9  Plaintiff's complaints of depression.  AT 175.  University of California, Davis Medical Center
10 staff provided only short term treatment for Plaintiff's anemia, renal failure, and diabetes, and
11 gave no long term functional assessment.  AT 180-223.
12 　　　　The ALJ noted that none of Plaintiff's treating physicians referred him for further
13 diagnostic testing or additional care.  Conservative care and the failure to seek medical treatment
14 can cast doubt upon a Plaintiff's subjective complaints.  Fair v. Bowen, 885 F.2d 597, 603 (9th
15 Cir. 1999).  Regardless, there is no indication in the record that any physician sought additional
16 care for Plaintiff's impairments.  Indeed, Dr. Agee was the second doctor who treated Plaintiff's
17 hand pain.  His surgery was largely a result of the failings of the initial treatment.  There is no
18 legal basis for discounting Plaintiff's testimony for failing to consult a third physician,
19 particularly when such a consultation may prove to be futile.  Dr. Agee reported that Plaintiff's
20 left hand will never be normal, AT 172, and that there is nothing he could offer for Plaintiff's
21 right hand pain.  AT 171.
22 　　　　The ALJ also found that Plaintiff's daily activities undermined his subjective
23 complaints.  Plaintiff's ability to engage in some daily activities does not compromise his
24 subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004);
25 Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th
26 Cir.1989) (holding that one need not be "utterly incapacitated" in order to be disabled).  There is

nothing in the activities cited by the ALJ that provides the quantum of evidence necessary to support the conclusion that Plaintiff spent a substantial part of his day performing activities consistent with those necessary for productive work. See Morgan, 169 F.3d at 600 (finding plaintiff's ability to fix meals, do laundry and yard work, and occasionally care for a friend's child sufficient to undermine complaints of pain).

The ALJ noted that Plaintiff does the laundry once a month. AT 14. Other activities described by Plaintiff included pushing the grocery cart while his girlfriend shopped, and walking on a treadmill. Id. In addition, the ALJ noted that Plaintiff described being unable to pick up coins, recognize what he is touching simply by feel, or sense heat in his left hand. Id.

None of these activities are sufficiently related to Plaintiff's impairments to permit the inference drawn by the ALJ about Plaintiff's credibility. There must be some connection between the activities performed by Plaintiff and the work setting in order to discredit Plaintiff's complaints. Fair, 885 F.3d at 600. Plaintiff makes no claims about his ability to walk or push, claims that might be undermined with a finding that Plaintiff pushes a grocery cart or walks on the treadmill. Rather, Plaintiff's limitations involve his hands and his ability to grasp and manipulate. The ALJ's findings about Plaintiff's daily activities seem to expressly acknowledge limitations in these areas. AT 14. The ALJ's citation to Plaintiff's daily activities is not substantial evidence to support his conclusions about Plaintiff's credibility.

Remand to the agency is generally preferred when there is an error in an agency determination. INS v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). However, where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, "[the court] will not remand solely to allow the ALJ to make specific findings regarding the testimony." Varney v. Sec'y of Health and Human Serves., 859 F.2d 1396, 1401 (9th Cir. 1988). There is no indication that Plaintiff would be presumptively disabled based upon the evidence in the record if his testimony is credited. But see Reddick v. Chater, 157 F.3d 715, 729 & n.13 (9th Cir. 1998)(remanding for

an award of benefits where the testimony by the claimant and the vocational expert, properly credited, established disability).  Furthermore, there is no indication that the ALJ committed anything more than harmless error in his evaluation of Plaintiff's credibility.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases).

The ALJ properly noted that most of Plaintiff's subjective complaints were supported by medical evidence in the record and entitled to full weight.  AT 14.  Indeed, in his findings, the ALJ agreed with Plaintiff that he suffered from severe hand injuries.  Id.

However, the ALJ discredited Plaintiff's complaints to the extent that they precluded him from performing any work.  Whether or not a Plaintiff is capable of work is the ultimate question in any disability evaluation.  This decision is the exclusive province of the ALJ.  Just as medical doctors do not possess the legal discretion to conclude that an award of benefits is proper, neither does the Plaintiff.  The ALJ's unwillingness to accept of Plaintiff's opinion as it concerned his inability to perform any work, and hence, Plaintiff's opinion regarding the ultimate issue of disability and entitlement to benefits, was proper.  As Plaintiff's opinion regarding the ultimate issue of disability is legally irrelevant, the ALJ's errors in discrediting this opinion were harmless.

d. The ALJ's Finding that Plaintiff Was Able to Perform His Past Relevant Work or Other Work that Existed in Significant Numbers in the National Economy Was in Error.

The ALJ found Plaintiff capable of performing his past relevant work as a yard foreman and driver for a fencing company.  AT 16.  According to the ALJ, in addition to numerous other specific limitations, this position did not require any lifting.  Id.  As a result of this finding, and based upon the vocational evidence of record, the ALJ found Plaintiff not disabled.  This finding was in error.

"Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion.  SSR 82-62.  See 20

14

1  C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965." Pinto v.
2  Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  "This is done by looking at the 'residual
3  functional capacity and the physical and mental demands' of the claimant's past relevant work.
4  20 C.F.R. §§ 404.1520(e) and 416.920(e)."  Pinto, 249 F.3d at 844-45.  The claimant must be
5  able to perform: (1) the actual functional demands and job duties of a particular past relevant job;
6  or (2) the functional demands and job duties of the occupation as generally required by
7  employers throughout the national economy.  Id. at 845 (citing SSR 82-61).  "This requires
8  specific findings as to the claimant's residual functional capacity, the physical and mental
9  demands of the past relevant work, and the relation of the residual functional capacity to the past
10 work."  Id. (citing SSR 82-62).  It is in the last two requirements that the ALJ erred.

        The ALJ stated that Plaintiff reported that he did not lift anything in his job at the fencing company.  Plaintiff did make that statement in his initial application.  AT 62.  However, during his testimony, Plaintiff clarified that he did in fact utilize a pry bar and rollers to move 300 pound pieces of wood.  AT 231.  This testimony is bolstered by Plaintiff's initial application where he noted that he lifted an amount greater than 100 pounds.  AT 62.

        The ALJ is charged with interpreting conflicts in the evidence.  See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  That resolution must be upheld where the evidence is susceptible to more than one rational interpretation.  See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).  Given the direct conflict between the two statements by Plaintiff, and the lack of any other evidence in the record to tip the balance, the ALJ's interpretation cannot be considered rational.

        The sole reasoning provided by the ALJ to support his interpretation of the evidence was the "vocational evidence of record."  AT 17.  This evidence consists of a statement from a case agent that Plaintiff is capable of performing his past duties as described in his application.  AT 161.  As this statement was made prior to Plaintiff's testimony, it was made without full knowledge of Plaintiff's impairments and can hardly be consider substantial

evidence upon which the ALJ may base his determination. Indeed, given the ALJ's previously stated acceptance of Plaintiff's general credibility, reliance on this evidence can only be consider selective, and contrary to the ALJ's duty to fairly evaluate all of the evidence in the record. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001)(holding that the findings were not supported by substantial evidence when the ALJ selectively relied on some entries in the medical record).

Furthermore, the case agent can hardly be considered a proper source upon which to base any conclusion about Plaintiff's past work. "Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed. One source is Plaintiff's own description of his work. SSR 82-41. See Pinto, 249 F.3d at 844-45. In this case, Plaintiff provided two conflicting statements about his work at the fencing company. As a result, Plaintiff's own testimony is not substantial evidence to support the ALJ's conclusion about his past relevant work

A second source is a properly completed vocational report. Id.; SSR 82-61. However, "the best source for how a job is generally performed is usually the Dictionary of Occupational Titles." Id. at 845-46 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) and 20 C.F.R. §§ 404.1566(d) and 416.966(d)). There is no evidence in the record that the ALJ relied on either of these expert sources to reach his conclusion or resolve the conflict in the evidence. This failure to properly resolve the contradiction in Plaintiff's testimony was error.

Remand is required in order to permit the ALJ to properly evaluate Plaintiff's past relevant work. In addition, the ALJ is obligated to relate Plaintiff's residual functional capacity to that past relevant work. The ALJ's resolution of any conflict in the testimony of Plaintiff about the nature of his past work must be thoroughly reasoned and supported by substantial evidence in the record.

In the alternative, the ALJ proceeded to step five of the sequential evaluation, finding that Plaintiff was capable of performing a significant number of jobs available in the

national economy. AT 17. This finding was based upon the ALJ's conclusion that Plaintiff was capable of performing light work with some manipulation limitations as a result of his wrist and hand injuries. AT 18. However, the ALJ failed to fully develop the record and Plaintiff's residual functional capacity assessment did not incorporate Plaintiff's severe impairment of diabetes. As such, the ALJ's alternative finding that a significant number of jobs exist in the national economy is in error. In order to address these errors, the ALJ is obligated to return to step two and continue the sequential evaluation. If necessary, based upon the complete record, a finding at step five may be warranted. However, given the need for remand, any determination on the merits of the ALJ's conclusion at step five is premature.

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross motion for summary judgment is denied; and

3. This matter is remanded for further proceedings consistent with this order.

DATED: October 30, 2006.

UNITED STATES MAGISTRATE JUDGE

13McClenton.1704.ss.wpd

17